UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**SONNY MADUMELU** | CASE NO.<br><br>JUDGE<br><br>INDICTMENT<br><br>18 U.S.C. § 1343<br>18 U.S.C. § 1956(a)(1)(B)(i)<br>FORFEITURE ALLEGATION |

FILED
RICHARD W. NAGEL
CLERK OF COURT

DEC 11 2025 2:49 P

U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO-COLUMBUS

2:25-CR-205
Judge Sargus

**THE GRAND JURY CHARGES:**

All dates and times in this Indictment are alleged to be "on or about," "in and around," or "through and including" the specific dates stated.

### COUNTS 1–7
### (Wire Fraud)

### GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise stated:

1. Defendant **SONNY MADUMELU (MADUMELU)** resided in the Southern District of Ohio.

2. The Coronavirus Aid, Relief and Economic Security (CARES) Act was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. The CARES Act created the Paycheck Protection Program (PPP), which was a program overseen by the U.S. Small Business Administration (SBA). The CARES Act also expanded the Economic Injury Disaster Loan (EIDL) Program, which was also a program overseen by the SBA.

3. The PPP authorized qualifying small businesses to receive forgivable loans to help pay payroll costs, rent, utilities, and other permissible expenses. The size of the PPP loan a

particular business could receive was based in part on the financial and other information provided in the PPP application. PPP loans were entirely forgivable if the funds were used for specified expenses.

4. In order to obtain a PPP loan, a business was required to submit a loan application to an approved lender. The loan application was required to be signed by an authorized representative of the business and was required to contain certain financial and other information. Applicants were also required to provide supporting documentation, such as federal tax returns and other financial documentation. Any PPP loans that were funded by financial institutions were fully guaranteed by the SBA.

5. The PPP loan application required a loan applicant to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain a PPP loan.

6. In January 2021, the SBA announced the availability of a second round of PPP loans, commonly known as "second draw" PPP loans.

7. The EIDL Program authorized qualifying small business to receive loans to help pay payroll, accounts payable, and other bills that could have been paid had the disaster not occurred.

8. In order to obtain an EIDL, a business was required to submit a loan application through an online portal maintained by the SBA. The applicant was required to provide financial and other information. The applicant electronically certified that the provided information was accurate. If approved, the U.S. Treasury directly issued EIDL funds. The SBA determined the amount of the EIDL offered based on the information provided on the loan application.

9. From June 2020 through September 2021, in the Southern District of Ohio and elsewhere, **MADUMELU** knowingly devised and intended to devise a scheme and artifice to

defraud the United States, and to deprive another of money by means of materially false and fraudulent pretenses, representations, and promises, and attempted to do so.

## MANNER AND MEANS

10. It was part of the scheme to defraud that **MADUMELU** submitted two EIDL applications to the SBA.

11. It was further part of the scheme to defraud that **MADUMELU** certified in his EIDL applications that the information provided in the applications was true and correct to the best of his knowledge.

12. It was further part of the scheme to defraud that **MADUMELU** knowingly submitted false information in his EIDL applications.

13. It was further part of the scheme to defraud that **MADUMELU** submitted multiple PPP loan applications to lenders—namely, applications to Cross River Bank, Transportation Alliance Bank, Inc. (including a second draw application), and Funding Circle.

14. It was further part of the scheme to defraud that **MADUMELU** certified in his PPP applications that the information provided in the applications and all supporting documents and forms was true and accurate in all material respects.

15. It was further part of the scheme to defraud that **MADUMELU** included false information in his PPP applications and submitted fraudulent documents in support of his PPP applications.

The following acts were also further part of the scheme to defraud:

### First EIDL Application

16. On July 4, 2020, **MADUMELU** submitted an EIDL application for the business "Trans world travel and shipping incl llc." The application falsely certified under the penalty of perjury that the business's gross revenues for the 12 months prior to the January 31, 2020, totaled $120,000. The SBA denied his application based on unsatisfactory credit history.

### Second EIDL Application

17. On July 12, 2020, **MADUMELU** submitted an EIDL application for the business "Uncle Sonny Traveling and Shipping." The application falsely certified under the penalty of perjury that the business's gross revenues for the 12 months prior to the January 31, 2020, totaled $50,000. The SBA denied his application based on unsatisfactory credit history.

### First Cross River Bank PPP Application

18. On February 21, 2021, **MADUMELU** submitted a PPP application through Cross River Bank for the business "Uncle Sonny Traveling and Shipping" with an Employer Identification Number (EIN) ending x0267. As part of the application, **MADUMELU** confirmed that the information he provided in the application was accurate and complete.

19. In support of his PPP application, **MADUMELU** submitted a false and fraudulent 2019 Schedule C that purported to show "Uncle Sonny Traveling and Shipping" had earned $117,649 in gross receipts or sales. In fact, the business did not have that amount in gross receipts or sales. When **MADUMELU** filed his U.S. Individual Income Tax Return for tax year 2019, he attached only one Schedule C, which reported $500 in gross receipts or sales.

20. In support of his PPP application, **MADUMELU** also submitted a false and fraudulent IRS Form 940. The Form 940 included the EIN ending x0267, and the signature on this form was dated March 9, 2020. In fact, however, the EIN ending x0267 was not issued by

4

the IRS until June 29, 2020—more than 3 months after the date on the false and fraudulent Form 940. In addition, the Form 940 that **MADUMELU** submitted in support of the PPP application was never filed with the IRS.

21. This PPP application with Cross River Bank was approved but never paid.

### Transportation Alliance Bank PPP Application

22. On February 25, 2021, **MADUMELU** submitted a PPP application through Transportation Alliance Bank, Inc., using his own name as a sole proprietorship. As part of the application, **MADUMELU** confirmed that the information he provided in the application was true and accurate in all material respects.

23. In support of his PPP application, **MADUMELU** submitted a false and fraudulent 2019 Schedule C that purported to show "Sonny Star Cleaners" had earned $108,913 in gross receipts or sales. In fact, the business did not have that amount in gross receipts or sales. When **MADUMELU** filed his U.S. Individual Income Tax Return for tax year 2019, he attached only one Schedule C, which reported $500 in gross receipts or sales.

24. This PPP application was approved. On February 26, 2021, Transportation Alliance Bank sent $20,050 to a Wright Patt Credit Union account in the control of **MADUMELU**.

25. On September 10, 2021, the SBA paid Transportation Alliance Bank, Inc., for forgiveness of the PPP loan.

### Second Cross River Bank PPP Application

26. On March 13, 2021, **MADUMELU** submitted a second PPP application through Cross River Bank for the business "Uncle Sonny Traveling and Shipping" with an EIN ending x0267. As part of the application, **MADUMELU** confirmed that the information he provided in the application was accurate and complete.

5

27. In support of his PPP application, **MADUMELU** submitted the same false and fraudulent 2019 Schedule C that he had submitted with his first Cross River Bank PPP application.

28. In support of his PPP application, **MADUMELU** also submitted the same false and fraudulent Form 940 that he had submitted with his first Cross River Bank PPP application.

29. This PPP application with Cross River Bank was approved. On March 18, 2021, Cross River Bank sent $70,184.37 to a JPMorgan Chase bank account in the control of **MADUMELU**.

30. On June 29, 2021, the SBA paid Cross River Bank for forgiveness of the PPP loan.

## Funding Circle PPP Application

31. On April 28, 2021, **MADUMELU** signed a PPP application through Funding Circle for the business "Transworld Travel & Transportation." As part of the application, **MADUMELU** confirmed that the information he provided in the application was true and accurate in all material respects.

32. In support of his PPP application, **MADUMELU** submitted a false and fraudulent 2019 Schedule C that purported to show "Transworld Travel & Transportation" had earned $732,683 in gross receipts or sales. In fact, however, the actual 2019 Schedule C that **MADUMELU** submitted to the IRS for tax year 2019 reported $500 in gross receipts or sales.

33. In support of his PPP application, **MADUMELU** submitted false and fraudulent IRS Forms 941 for certain quarters. The Forms 941 included an EIN ending x8154, and the signatures on the forms had dates ranging between April 22, 2019, and April 10, 2020. In fact, however, the EIN ending x8154 was not issued by the IRS until March 2021. In addition, the

6

Forms 941 that **MADUMELU** submitted in support of the PPP application were never filed with the IRS.

33. 34. This PPP application was approved. On April 30, 2021, Funding Circle sent $142,690 to a PNC Bank account in the control of **MADUMELU**.

35. On August 6, 2021, the SBA paid Funding Circle for forgiveness of the PPP loan.

### Transportation Alliance Bank Second Draw PPP Application

36. On May 21, 2021, **MADUMELU** submitted a second draw PPP application through Transportation Alliance Bank, Inc., using his own name as a sole proprietorship. As part of the application, **MADUMELU** confirmed that the information he provided in the application was true and accurate in all material respects.

37. In support of his Transportation Alliance Bank second draw PPP application, **MADUMELU** submitted the same false and fraudulent 2019 Schedule C that he had submitted with his original Transportation Alliance Bank PPP application.

38. This second draw PPP application was approved. On May 25, 2021, Transportation Alliance Bank sent $20,833 to a Wright Patt Credit Union account in the control of **MADUMELU**.

39. On September 10, 2021, the SBA paid Transportation Alliance Bank, Inc., for forgiveness of the second draw PPP loan.

## EXECUTION OF THE FRAUD SCHEME

40. On or about each of the dates set forth below, in the Southern District of Ohio and elsewhere, **MADUMELU**, for the purpose of executing the scheme described above and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description |
|---|---|---|
| 1 | July 4, 2020 | Electronic submission of first EIDL application |
| 2 | July 12, 2020 | Electronic submission of second EIDL application |
| 3 | February 21, 2021 | Electronic submission of first PPP application to Cross River Bank |
| 4 | February 25, 2021 | Electronic submission of PPP application to Transportation Alliance Bank, Inc. |
| 5 | March 13, 2021 | Electronic submission of second PPP application to Cross River Bank |
| 6 | April 28, 2021 | Electronic submission of PPP application to Funding Circle |
| 7 | May 21, 2021 | Electronic submission of second draw PPP application to Transportation Alliance Bank, Inc. |

**All in violation of 18 U.S.C. § 1343.**

## COUNTS 8–15
### (Concealment Money Laundering)

41. Paragraphs 1 through 40 are incorporated here.

42. On each date set forth below, in the Southern District of Ohio and elsewhere, **SONNY MADUMELU** did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity— namely, the Wire Fraud offenses set forth in Counts 1 through 7 of this Indictment— knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, each transaction constituting a separate count:

| Count | Date | Amount | Financial Transaction |
|---|---|---|---|
| 8 | March 2, 2021 | $15,000 | Withdrawal from Wright Patt Credit Union account |
| 9 | March 22, 2021 | $43,000 | Outgoing wire transfer from JPMorgan Chase Bank account, with wire reference "Family Expenses" |
| 10 | May 5, 2021 | $11,000 | Withdrawal from PNC Bank account |
| 11 | May 6, 2021 | $11,000 | Withdrawal from PNC Bank account |
| 12 | May 10, 2021 | $45,000 | Withdrawal from PNC Bank account |
| 13 | May 11, 2021 | $26,000 | Withdrawal from PNC Bank account |
| 14 | June 7, 2021 | $10,000 | Withdrawal from Wright Patt Credit Union account |
| 15 | June 9, 2021 | $7,000 | Withdrawal from Wright Patt Credit Union account |

**All in violation of 18 U.S.C. § 1956(a)(1)(B)(i).**

## FORFEITURE ALLEGATION

43. Paragraphs 1 through 40 are incorporated here.

44. Upon conviction of any of the Wire Fraud offenses alleged in Counts 1 through 7 of this Indictment, **SONNY MADUMELU** shall forfeit to the United States, under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any and all property constituting or derived from proceeds traceable to such violation, including but not limited to a sum of money equal to $253,757 in United States currency in the form of a forfeiture money judgment.

45. If, as a result of any act or omission of **MADUMELU**, the forfeitable property so described, or any portion thereof cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of **MADUMELU** up to the value of the subject property.

Forfeiture in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

                 **A TRUE BILL**

                 s/Foreperson
                 **FOREPERSON**

**DOMINICK S. GERACE II**
**United States Attorney**

_____
**PETER K. GLENN-APPLEGATE (0088708)**
**Assistant United States Attorney**